James Martinez (SBN 235800)
**LAW OFFICE OF JAMES MARTINEZ**
2340 Powell Street, #317
Emeryville, California 94608
Telephone: (510) 444-7700

Attorneys for
**MAURO BUCIO**

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| **IN RE MARIO ROBERTO JUAREZ, AKA MARIO JUAREZ, DBA FIRESIDE CALIFORNIA GROUP, INC., DBA MARIO JUAREZ SELLING TEAM,** ) ) ) ) | **Case No.: 13-40355 RLE**<br><br>**Chapter 13** |
| **Debtor,** ) ) ) | **PLAINTIFF MAURO BUCIO'S CLOSING TRIAL BRIEF** |
| ——————————————— ) | ——————————————————— |
| **MAURO BUCIO,** ) ) | **ADVERSARY PROCEEDING NUMBER 13-04086** |
| **Plaintiff,** ) ) | |
| ) ) | **Trial Date: August 11-12, 2014**<br>**Location: Room 201** |
| **MARIO ROBERTO JUAREZ, AKA MARIO JUAREZ,** ) ) | **Judge: Hon. R. Efremsky** |
| **Defendant.** ) ) ) | |

Case: 13-04086    Doc# 69    Filed: 12/31/14    Entered: 12/31/14 22:46:59    Page 1 of 13

## I.    INTRODUCTION

Defendant Mario Juarez *swindled* Plaintiff Mauro Bucio out of $215,000 in the span of five months. Defendant Juarez was acting as Mr. Bucio's real estate agent in the purchase of his current home.  As Mr. Bucio's real estate agent, Defendant Juarez was privy to his financial position and was well aware of what pecuniary resources he had available.  During that time, after gaining his trust in the real estate transaction, Defendant Juarez approached Mr. Bucio three time with three stories in order to defraud him of these monies.  As was apparent to everyone in the Courtroom, even those individuals who were present only briefly, Defendant Juarez lied while he testified in this trial.  Defendant Juarez lied to Mr. Bucio as assuredly as he lied to the Court when he was on the witness stand.  These three fraudulent transactions concocted and solicited by Defendant Juarez are not dischargeable in bankruptcy court, and Defendant Juarez should not be permitted to seek refuge here for his wrongdoings.

## II.    THE $100,000 LOAN

Mario Juarez prior to all of the subject transactions, was Mauro Bucio's real estate agent in the purchase of his present home. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 30; lns. 12-25).  As such, Mario Juarez was privy to Mauro Bucio's financial position, having done a background check using Mr. Bucio's social security number, including obtaining a credit report. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 25; lns. 14-25). Indeed, Defendant Juarez knew prior to these transactions that Mauro Bucio had access to $215,000.

In January 2008, Defendant Mario Juarez approached Mr. Bucio regarding an investment in a biodiesel plant.  Defendant Juarez told him he was looking for investors, that he needed only one or two more investors, and that this deal was only going to be for a year. Mr. Bucio did not want to be an investor.  Defendant Juarez told Mr. Bucio that the money, the $100,000 would not

be touched, and would be used only to show the City of Oakland that they were serious investors. Defendant Juarez showed Mr. Bucio items regarding this purported biodiesel project, including a brochure and a tube of biodiesel. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 31, ln. 23 - Pg. 34, ln. 4); (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 34; ln. 17 – pg. 35, ln. 1). Mr. Bucio never asked for the terms of this loan; Mario Juarez dictated all terms, prepared and drafted all documents related to this transaction. (Exhibits 1, 2; 8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 35, ln. 2 – Pg. 36, ln. 10; Pg. 38, ln. 15 – Pg. 39, ln. 10; Pg. 39, ln.18 – Pg. 40, ln. 9; Pg. 48, lns. 14-20). Based on Mario Juarez's representations that there was no risk involved in this transaction because the money would never be touched and would be returned to the investors in one year, Mr. Juarez tendered a $95,000 check to Mario Juarez. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 40, ln. 23 – Pg. 41, ln. 41, ln. 2). The fact of the matter is that there was no biodiesel project and Mario Juarez simply pocketed this money, making only sporadic and insignificant payments to further string along Mr. Bucio in preparation for two further scams. *At trial* (as opposed to his deposition testimony) Mario Juarez's testimony was that he told Mr. Bucio that the real estate market was in an unprecedented downturn, that he was in financial straits, and he needed the money to pay his personal bills and expenses. He stated this to be the case for all three loans. This of course is another of Mario Juarez's lies. But assuming, *arguendo*, it to be true, it is a ridiculous story. No one would give $95,000 to a dying concern, then a few months later, provide an additional $75,000 after being told that the business is still failing, and a few months later present another $45,000 (Mr. Bucio's last monies) to a dead business. Mr. Juarez's testimony is simply another attempt at deception.

But of course this sharply contrasts with Mr. Juarez's deposition testimony wherein he stated he didn't remember if he told Mr. Bucio why he needed to borrow $100,000. (Juarez

deposition, November 7, 2012, page 150, lines 12-22). Mario Juarez is borrowing *$100,000* but doesn't remember if he told that person why he needed that amount of money. Almost always, most people will remember and tell you why they wanted to borrow just $5 from someone. Although Mario Juarez was under oath, his testimony at trial and at his deposition, cannot be given any credence. Mr. Bucio, on the other hand, was always forthcoming and honest both at trial and at his deposition.

Mario Juarez swindled $95,000 from Mr. Bucio by making these false representations and selling him on this biodiesel scam. This is the very essence of fraud, makes this transaction non-dischargeable, and Plaintiff respectfully requests that the Court issue that order, along with compensatory and punitive damages.

### III. The $75,000 Loan

In this fraudulent transaction, Mario Juarez used similar facts as those he used regarding the $100,000 loan, but with a twist. Mauro Bucio did not recall the exact dates of this transaction off-hand. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 49, lns. 20-25). Mario Juarez once again approached Mauro Bucio for a loan. Mario Juarez told Mr. Bucio that one of the biodiesel investors was getting divorced and he had to return his investment, which presented yet another opportunity for Mr. Bucio to invest in the purported plant. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 50, ln. 3 – Pg. 51, ln. 23). This money he told Mr. Bucio, was going to be used towards the purported biodiesel just like the $100,000 and was not to be touched. The fact that Mario Juarez returned the money to the investor garnered more trust in that it appeared that the investment money was not touched and returned – just as he had represented. The terms were essentially the same as the $100,000 loan, with a term of one year, and were not negotiated by Mr. Bucio. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg.

52, ln. 19 – Pg. 56. ln. 4).  Based on Mario Juarez's misrepresentations, Mr. Bucio tendered the $75,000 to Mario Juarez on or about April 1, 2008 (Exhibit 4; 8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 52, ln. 19 – Pg. 56. ln. 4)..  In furtherance of the fraud, Mario Juarez gave Mr. Bucio a promissory note.  (Exhibit 3).  Mr. Bucio was not involved in the drafting of any of the documents.  Mr. Bucio does not know what a secured loan is, or what a promissory note is. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 54, ln. 3 – Pg. 55. ln. 7).  Mr. Bucio again tendered money to Defendant Juarez based on his representations, which were deceitful.  There never was a biodiesel project, never any investors, and no investor to whom Defendant Juarez returned money.

### IV.    The $45,000 LOAN

Once again, Mario Juarez approached Mr. Bucio for another "business opportunity", this time for a purported "Bridge Loan".  Again Mario Juarez explained to Mr. Bucio that this money was not to be touched, but was to be used to qualify one of his clients for a loan. Mario Juarez promised a quick $2,000 profit in no more than two weeks. This loan was made in May 2008. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 60, ln. 18 – Pg. 61, ln. 25).  Again, in furtherance of this scheme, Mario Juarez showed him a handwritten document entitled "Bridge Loan" in a questionable attempt to "explain" what a bridge loan is.  (Exhibit 5; 8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 62, lns.1-9).  Based on Mario Juarez's misrepresentations, Mr. Bucio tendered the $45,000 to Mario Juarez.  (Exhibit 5, 6, 7; 8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 62, ln. 12 – Pg. 65, ln. 6).

Defendant makes an anemic attempt to discredit Mr. Bucio because of some initial confusion regarding the dates of this loan.  But Mario Juarez himself did not remember the order of the three loans.  (Juarez deposition, November 7, 2012, page 150, lines 1-9).

Moreover, the promissory note given to him by Mario Juarez not only was not signed, it is dated December 7, 2007 – an incorrect date. (Exhibit 7; 8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 64, ln. 22 – Pg. 65, ln. 7). When Mr. Bucio requested the return of this money from Mario Juarez, he was repeatedly told there was a problem and that this money was tied up in litigation. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 67, ln. 15 – Pg. 70, ln. 16). None of this was true.

Mr. Bucio testified that Mario Juarez never told him that he was having financial difficulties, and in fact was always led to believe that Mario Juarez was always successful. Mario Juarez never told Mr. Bucio that he was having financial difficulties prior to the $100,000 loan, as also told him he was doing well and successful in real estate. Mr. Bucio testified that Mario Juarez never told him he was going to use the $100,000 for his personal expenses prior to the $100,000 loan. Similarly, prior to the $75,000 loan, Mario Juarez never told him he was having financial difficulty. Prior to lending the $75,000 to Mario Juarez, Mario Juarez never told Mr. Bucio that he was going to use the $75,000 for his personal expenses. Prior to the $45,000 loan, Mario Juarez never told Mr. Bucio that he was having financial difficulties. Mario Juarez never told Mr. Bucio he was going to use the $45,000 for his personal expenses. Mr. Bucio asked for the return of his monies. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 70, ln. 17 – Pg. 73, ln.7). Mario Juarez did not make significant or consistent repayment of the monies, and no payments towards the $45,000 loan. Any argument that defendant might make that he did not obtain these monies based on false pretenses, false representations, or actual fraud because he made some minimal payments is *not* supported by the law. *In Re Richard Bradley Miller vs. Mandalay Resort Group*, 310 B.R. 185 (2004). As became quite evident at trial, Mario Juarez is not an honest and unfortunate debtor, but instead a lier and a scam artist.

*Grogan vs. Garner*, 498 U.S. 279 (1991). None of these fraudulent transaction are dischargeable here.

## V. MR. BUCIO'S RELIANCE ON MARIO JUAREZ'S MISREPRESENATIONS WAS JUSTIFIED

Mario Juarez presented three different stories to Mr. Bucio in order to take $215,000 from him. Mr. Juarez was Mr. Bucio's real estate agent in a concurrent transaction, thereby gaining his trust and favor. In addition, all discussions between in Mr. Juarez and Mr. Bucio were in Spanish, further gaining his trust. (8/11/2014 Trial Transcript; Mr. Bucio testimony; Pg. 36, lns. 24-25). There is a presumption of reliance when the misrepresentation was material as they are here *Engalla vs. Permanente Medical Group, Inc.*, (1997) 15 Cal.4th 951, 977. The test for determining the justifiability of reliance is whether the person claiming reliance was justified in believing the representation in the light of his or her own knowledge and experience. *Gray vs. Don Miller & Assocs. Inc.*, (1984) 35 Cal.3d 498, 503. The plaintiff is not held to the standard of precaution or minimum knowledge of the hypothetical reasonable person. The plaintiff will be denied recovery only if the plaintiff's conduct is manifestly unreasonable in the light of the plaintiff's own intelligence or information. It must be shown that the plaintiff put faith in representations that were "preposterous" or "shown by facts within his or her observation to be so patently and obviously false that the plaintiff must have closed his or her eyes to avoid discovery of the truth". Even in the case of a mere negligent misrepresentation, a plaintiff is not barred unless the plaintiff's conduct, in the light of the plaintiff's own information and intelligence is preposterous and irrational. *Hartong vs. Partake, Inc.*, (1968) 266 Cal.App.2d 942, 964-965; *Atari Corp. vs. Ernst & Whinney*, 981 F.2d 1025, 1030-1031 (9th Cir. 1992).

Mr. Bucio had no reason to believe that Mario Juarez was lying to him. In fact, when Mr.

Case: 13-04086    Doc# 69    Filed: 12/31/14    Entered: 12/31/14 22:46:59    Page 7 of 13

Bucio did inquire about his money, Mario Juarez always had a new story to tell him, and if pried with further questions, he would say that the identity of his client was "confidential".

Whether the plaintiff justifiably relied is generally a question of fact, but it is not necessary to show reliance on a false representation by direct evidence. *Meyer vs. Ford Motor Co.*, (1969) 275 Cal.App.2d 90, 105. The fact of reliance on false representations may be inferred from the circumstances attending the transaction, which often afford much stronger and more satisfactory evidence of the inducement that prompted the party defrauded to enter into the contract that his or her direct testimony to the same effect. *Vasquez vs. Superior Court*, (1971) 4 Cal.3d 800, 814. Defendant Juarez was Mr. Bucio's real estate agent, spoke his language, and gained his trust and favor with a web of deceit. Mr. Bucio trusted Defendant Juarez, and justifiably so because he was a licensed real estate agent, represented him in the successful purchase of his home, and otherwise had no reason to distrust him until it was too late.

## VI. NEGLIGENCE IS NOT A DEFENSE TO FRAUD

A defrauded party's negligence is not a defense to intentional fraud, intentional concealment, or failure to disclose a known material fact by the party committing fraud. *Oakes vs. McCarthy Co.*, (1968) 267 Cal.App.2d 69, 76; *Storage Services vs. Oosterbaan*, (1989) 214 Cal.App.3d 498, 508. Mere negligence in failing to investigate or verify to determine the truth of a representation is *not* a defense to fraud. *In re Apte*, 96 F.3d 1319 (9th Cir. 1996).

Indeed, there is *no duty to investigate*. Defendant's brief suggesting otherwise does not reflect the law. If one is justified in relying, as Mr. Bucio did here, and in fact does rely as Mr. Bucio did here, on false representations, his or her right of action is not destroyed merely because he or she could have discovered the true facts by investigation or other means. That is to say, plaintiff has no duty to investigate the truth of representations that he or she was justified

Case: 13-04086    Doc# 69    Filed: 12/31/14    Entered: 12/31/14 22:46:59    Page 8 of 13

in relying upon.  *Howell vs. Courtesy Chevrolet, Inc.*, (1971) 16 Cal.App.3d 391, 403.  That is the case even if the plaintiff has an opportunity to make an inspection or investigation that would reveal the falsity of the defendant's statements to him or her; he or she is not required to make the investigation if the defendant has asserted facts about the subject matter.  *Storage Services vs. Oosterbaan*, (1989) 214 Cal.App.3d 498, 508; *Balfour, Guthrie & Co. vs. Hansen*, (1964) 227 Cal.App.2d 173, 193.  The fact that an investigation would have revealed the falsity of a misrepresentation will not alone bar recovery, unless the conduct of the plaintiff in light of the plaintiff's own intelligence and information was manifestly unreasonable.  *Meyer vs. Ford Motor Co.*, (1969) 275 Cal.App.2d 90, 105.  Even if the plaintiff does make an independent investigation or examination, this does not preclude reliance on the defendant's representations if the falsity of the statement is not apparent from an inspection, or the person making the representations has superior knowledge, or the party relying on the investigation is not competent to judge the facts without expert assistance.  *Snelson vs. Ondulando Highlands Corp.*, (1970) 5 Cal.3d 243, 252; *Horn vs. Guaranty Chevrolet Motors*, (1969) 270 Cal.App.2d 477, 482.  In addition, if plaintiff made an attempt to investigate but negligently failed to discover the falsity of the defendant's representations, this negligence will not relieve the defendant from liability for his or her intentional misrepresentations.  *Manderville vs. PCG&S Group, Inc.*, (2007) 146 Cal.App. 4th 1486, 1502-1503.

The general rule is that unless a party's reliance is irrational or preposterous, they are entitled to rely on the representations of the other party without making an independent investigation to discover the falsity of the representation.  *Gagne vs. Bertran*, (1954) 43 Cal.2d 481, 488-489.  Plaintiff at trial proved facts establishing reasonable and justifiable reliance.  Defendant is mistaken to suggest that a further inquiry by Plaintiff is required to show reasonable

reliance. Moreover, the defense of contributory negligence does not apply to actions for intentional misrepresentation. Justifiable reliance may be shown even if the plaintiff relied under such circumstances as to make it unreasonable to accept the defendant's statement without an independent inquiry or investigation. *Howell vs. Courtesy Chevrolet, Inc.*, (1971) 16 Cal.App.3d 391, 403. The plaintiff's recovery is not reduced unless the plaintiff's conduct, in light of plaintiff's own information and intelligence, is preposterous and irrational. *Hartong vs. Partake, Inc.*, (1968) 266 Cal.App.2d 942, 965. That is, plaintiff's conduct is *not* the subject of a strictly objective test. *Godfrey vs. Steinpress*, (1982) 128 Cal.App.3d 154, 176; *Howell vs. Courtesy Chevrolet, Inc.*, (1971) 16 Cal.App.3d 391, 403; *Wilke vs. Coinway, Inc.*, (1967) 257 Cal.App.2d 126, 138; *Vogelsang vs. Wolpert*, (1964) 227 Cal.App.2d 102, 111-112.

Defendant Juarez's argument is simply, "I defrauded him, but he should have known it". That is an absurdity.

## VII.    MARIO JUAREZ'S "INCONSISTENCIES" IN HIS TESTIMONY

Plaintiff could literally spend more than a hundred pages setting forth Mr. Juarez's numerous and blatant lies at both his depositions and at trial, and the undersigned would be happy to do so at the Court's request. Plaintiff will only set forth a few here. Defendant Juarez testified he sent and received a number of text messages to Mr. Bucio in Spanish. At his deposition, Mr. Juarez testified he reads very little Spanish, and even feigned that he did not understand a simple word in Spanish. (Juarez November 14, 2012, Volume III, page 296-298, ln.7). Mr. Juarez even stated that "It's hard since I don't understand Spanish" (Juarez November 14, 2012, Vol.III, pg. 297, ln.14). As the Court will recall, opposing Counsel spent a good deal of time at trial having Mr. Bucio translate numerous text messages sent from Defendant Juarez in Spanish. (8/11/2014 Trial Transcript; Mauro Bucio testimony; Pg. 139, ln. 22 – Pg. 158, ln. 2).

When asked if he ever talked to Mr. Bucio about a bridge loan, he stated "no". (Juarez 7/14/2014 deposition, pg. 66, lns. 10-12). When asked if he showed Exhibit 2, the "Bridge Loan" document (Exhibit 5 in this case) to Mr. Bucio, Mario Juarez said "No". (Juarez 7/14/2014 deposition, pg. 65 lns. 24 – pg. 66, lns. 1-9). **This of course is in direct contradiction to his testimony at trial wherein he stated he used it as teaching tool for Mr. Bucio** (also a lie). (8/12/2014 Trial Transcript; Mario Juarez testimony; Pg. 98, lns. 1-25). (*See also 8/12/2014 Trial Transcript; Mario Juarez testimony; Pg. 91, ln. 18 – Pg. 99, ln. 23*). It also contradicts his earlier deposition testimony wherein he denied even recognizing this exhibit and his very own handwriting, again contradicting his trial testimony. (Juarez November 12, 2012 Deposition, pg. 326, lns. 14- pg. 327, ln. 8). More importantly, Mr. Juarez at trial stated he told Mr. Bucio that he was asking for, and would be using his monies for his personal expenses. This of course is in direct contraction to his deposition testimony where he clearly states he did not tell Mr. Bucio why he wanted and needed the money. (Juarez November 7, 2012 deposition, page 150, lns. 20-22; pgs. 200, ln. 25 to 201, lns 1-6; pgs. 113, lns. 16 to pg. 114, lns 1-2). The undersigned has handled several cases involving fraud, including and usually those against real estate agents and brokers, yet this one is the most egregious by a long shot.

## VIII.   EVERY WORD DEFENDANT MARIO JUAREZ SAID AT TRIAL WAS A LIE, INCLUDING THE "AND" AND THE "THE"

With appropriate apologies to Mary McCarthy for the above paraphrase, it was explicitly shown at trial that Defendant Mario Juarez gave deliberately false testimony at his depositions, as well as during his trial testimony. Mario Juarez took oaths to tell the truth at each of his depositions and was sworn in before he gave testimony at trial. Those oaths meant a whole lot of

nothing to Mr. Juarez, and he proceeded to repeatedly spew numerous falsehoods even after having been given every opportunity by opposing counsel, and the Court, to tell the truth.

Mario Juarez made a mockery of the judicial systems and the oaths he took to tell the truth. Mario Juarez defrauded Mauro Bucio out of $215,000 dollars in three separate transactions. This adversary proceeding was obviously and clearly Mario Juarez's attempt to perpetuate yet another fraud, this time against the Court.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

Case: 13-04086    Doc# 69    Filed: 12/31/14    Entered: 12/31/14 22:46:59    Page 12 of 13

## IX.    CONCLUSION

Mario Juarez routinely recited perjuries throughout this litigation.  The only credible and truthful evidence in this case comes from the testimony of Mr. Mauro Bucio.  The evidence conclusively establishes that Mr. Bucio was intentionally defrauded out of $215,000 by Mario Juarez, obtaining that money by the material and false misrepresentations he proffered.  As such, it violates the provisions of 11 U.S.C. §523(a)(2)(A), and therefore, constitute grounds to deny the debtor's discharge.  Plaintiff also respectfully requests damages:  Plaintiff is entitled to repayment of the loans, plus interest at the legal rate, less any payments.  To wit:  $215,000 - payments of $27,200 = $187,800.  Interest at 10% per annum for the past six years on the outstanding balances totals approximately $165,878.  Plaintiff also seeks attorney's fees and costs.  Finally, this flagrant case of fraud warrants punitive damages, which Plaintiff requests in the amount of up to nine times actual damages.

Dated: December 31, 2014            RESPECTFULLY SUBMITTED,

**LAW OFFICE OF JAMES MARTINEZ**


_____/s/_____

JAMES MARTINEZ
Attorneys of Plaintiff
2340 Powell Street, #317
Emeryville, CA  94608
(510) 444-7700

Case: 13-04086    Doc# 69    Filed: 12/31/14    Entered: 12/31/14 22:46:59    Page 13 of 13